Case number 22-2321 from Nebraska, Andrew Kelly v. Omaha Public Power District Ms. Geisler, when you're ready. Good morning, your honors. May it please the court. My name is Ellen Geisler, and I represent the appellant, Mr. Andrew Kelly. This case is about a veteran who was denied over $30,000 in employment benefits over the course of his employment due to his receipt of GI Bill benefits for his time in the service. OPPD forced Mr. Kelly to use his GI Bill monthly stipend to pay for his college tuition and fees that OPPD would have paid if Mr. Kelly had not received GI Bill benefits for his time in the service. Under OPPD's policy, receipt of VA education benefits is a basis for denial of EEP tuition reimbursement benefits. OPPD discriminated against Mr. Kelly by denying him a benefit of employment he otherwise would have been entitled and eligible to receive absent his military service. The district court committed error when it strayed from the proper analytical framework under Section 4311 of USERRA. First, reaching the erroneous conclusion that USERRA doesn't prohibit an employer from offsetting similar military benefits against employment benefits. Then, working backwards, erroneously concluding that Mr. Kelly had not shown his military service was a motivating factor in OPPD's decision to deny him EEP benefits, rejecting all the evidence adduced by Mr. Kelly to the contrary, including the threats by OPPD's decision-maker, Ms. Paula Pittman, that he would be prosecuted. That email is found in the addendum, page 18. The burden-shifting framework under Section 4311 of USERRA is unique. USERRA does not follow the McDonnell-Douglas burden-shifting framework found in other discrimination cases. Instead, if the employer shows that his or her military service or status is a motivating factor for the employer's action, then the only defense to liability is for the employer to show that it would have taken the same action in the absence of the employee's military service. There is no evidence in the record that OPPD would have taken the same action in the absence of Mr. Kelly's military service. What about all the other instances, and this is what's weird about this case, all the other instances where they've applied this to other types of grants, from foundations? My sense is, other than the rich aunt or rich uncle example that was given in the record, they pretty much draw the line and do it exactly consistently with every form of outside aid. Am I wrong about that? So in the record, I believe there is some evidence offered in the form of a declaration from Darlene Brown to that effect. But as far as the—I lost my train of thought. I'm sorry, Your Honor. No, just getting at whether the denial of benefits was really because of the military service and whether or not they were consistent in their practice of denying for any type of outside aid or reducing based on outside aid, which seems to be an important issue in this case, either under the first or second part of the burden-shifting framework. And OPPD's Darlene Brown told Mr. Kelly that instance where they wouldn't take into account other sources of private funding for college, such as a rich aunt or something like that. And so that's where we would say that the reasoning that OPPD is offering for their treatment of Mr. Kelly, that that would be pretextual because they're not taking into account all sources of funding, only certain sources of funding. And a grant and a scholarship are much different from VA education benefits, which you are only able to receive if you've served your country. And so equivocating those two or those three different kinds of benefits as being the same is not really a fair assessment. Go ahead. I would say, although, you know, those are not really outside funding in the tradition. The rich aunt or uncle, that's like a familial gift. And so that's not an outside funding. I get the sense, though, as to outside funding, meaning outside the family, you know, formal financial support that the company was very even-handed. Am I wrong about that? I did it across the board. Pell grants, the whole shebang. I don't think that there was evidence offered at the summary judgment stage to that effect. So beyond the declaration of Darlene Brown, I don't think we have evidence of their treatment of non-military members. They did provide some evidence in Darlene Brown's declaration that they also denied another military member EEP benefits on the basis of his receipt of GI Bill benefits. Yeah, but it does seem like Darlene Brown is saying that, you know, we've got any other outside source with the rich aunt exception. If you think of the rich aunt exception, it's basically like, man, you could be Jeff Bezos and you could come in here. And if you worked for Omaha Power and you said, I am going on to get my master's degree and I should get my tuition reimbursement, you're still going to get it, even though you have the wherewithal to pay it. And the rich aunt kind of is just sort of another family pocket that you can draw onto, right? But she's kind of said that everything else, whether it's a government payment or a foundation payment or a grant payment or a scholarship that you get, that all those other things are coming off the top, right? Is that what she said? That's what she said, Your Honor, yes. Right. And so it strikes me and it seems that there's been some indication of this, but it hasn't been the heart of anyone's argument that really the thing that is different here is that the GI Bill benefits really actually are two pockets of money, right? Because there's the money that you pay into the program while you're actively serving, right? Yes, Your Honor. And then there's the granting part of it that the government pours into those GI Bill benefits, right? Now, those GI Bill benefits, if you are not required to expend them for your personal education because you can access the grant that Omaha Power has put into place, right? Those dollars still are there. And then the defendant could have used them to pursue his law degree, which was not otherwise covered. Or if he doesn't use them, he can give them to a spouse or to a child, right? So he's actually being asked to spend money that's in his pocket in this analysis as opposed to just a mere government grant. Now, is that a sufficient distinction for us to say that somehow these GI Bill benefits are different? Yes, I think you're exactly right, Your Honor. And that was what the Department of Labor's Vets Decision Investigator concluded was that Mr. Kelly should not be forced to use those monthly benefit GI Bills for him being in a qualifying educational program. He shouldn't be required to use those towards his tuition. The OPPD would have covered if he wasn't serving in the military. Right. So why wasn't that a central part of our briefing here and a central part of your arguments as you started off? I believe it was in the briefing, Your Honor. Just tangentially. Your focus on your briefs has always been something different than here's what's going on, that Mr. Kelly is being required to spend his own money, even though there's a grant program where if he hadn't served in the military, he wouldn't have to spend his own money. Right, because this is Mr. Kelly's money. It's a different thing than most other government, than Pell Grants or scholarships or other things. There's a component in there where Kelly's money is sitting in this account. And it's sitting in this account because he was in the military. Right. And he's being required to spend those funds when no one else would be required to because of this policy. Exactly. And the district court rejected that argument below and reached the conclusion that USERA did not prohibit an employer from offsetting the receipt of similar military benefits from employment benefits that would be offered by the employer. So it reached that conclusion right out the gate, and then it went through its analysis under Section 4311 subsequently. I think that analysis was essentially to try and justify the conclusion it reached at the outset. And so under the burden-shifting framework of USERA in Section 4311, which this court has recognized as being critical in the Doris v. TXD case, the court should have found that there was sufficient evidence that Mr. Kelly had adduced that his service or status was a motivating factor in OPPD's decision to deny him EEP benefits. If the court had correctly reached that conclusion, then the burden would have shifted to OPPD to show that it would have taken the same action in the absence of Mr. Kelly's military service. And there's no evidence that OPPD could provide that they would have taken the same action. In fact, they initially had granted Mr. Kelly EEP benefits, and when Mr. Kelly subsequently disclosed that he had begun to receive GI Bill benefits, then they retroactively went back, denied him his application, and required him to repay those EEP benefits that he was otherwise entitled to receive. But their argument, of course, is that it's an outside benefit, and it's no different than what we would otherwise consider. Do we have anything in the record that talks about things like Section 529? Is that the right number? Accounts. Would they have treated those the same? And if they would, then he's really in no different position. Military service didn't have anything to do with it at that point, right? And what we do have is just sort of this declaration by Ms. Brown that says that if there's anything else sitting out there other than the rich aunt exception, which I think is really unless you've got the money sitting in your own checkbook exception, that we take it into consideration. Could they do that? There's no evidence in the record as to whether OPPD took into consideration other types of savings accounts or similar things of that nature. We only have the evidence that they also discriminated against another military member to the extent, to a lesser degree, they only denied him 60 percent of his EEP benefits to cover the cost of tuition. In Mr. Kelly's case, they denied him the entirety of his applications for EEP benefits. What about the causation issue, too? I mean, that's something I think the district court focused on, and by that I mean there's no direct connection between the military service and the denial. There is one step in between, at least one step in between. There's the military service that led to the GI Bill benefits, the payment into the GI, which then led to the denial of benefits. Is a once-removed causal chain good enough under the statute? Because remember, the text says military service must be the reason for the denial, and here it kind of was, kind of wasn't, depending on how you view the causal chain. Yes, Your Honor. So this Court should follow the Federal Circuit Court of Appeals reasoning in the Erickson v. United States Postal Service case, and in that case, it was a similar set of facts where it was a once-removed question where that employee was terminated, and the basis for the termination was his absence from work, and the employer said, well, because he was absent from work, we terminated him, and because we would have done the same thing for any non-military member, that means our action wasn't discriminatory. The Federal Circuit rejected that argument, finding you can't gloss over the fact that the absence was due to the military service because he was called up for duty. But that's a totally different kind of analysis, just in the sense that, you know, that's why this act that we're talking about exists primarily, is that, you know, we don't want people to find themselves unemployed because they've been called into active duty and sent overseas, and we're not going to let people terminate folks except under circumstances where it's really a necessity of the business, right? And that's kind of like the Soldiers and Sailors Relief Act, you know? It's the same thing. It's like we don't want guys being sued when they're out getting shot at, you know, overseas, right? That's a little different than, well, I've accumulated this benefit, and I mean, don't you think that we're really kind of comparing apples to oranges? I'm just rambling, and I don't want to eat up your entire rebuttal. Well, both of those would be under Section 4311. It prohibits discrimination on the basis of service as well as it prohibits discrimination as to benefits for that service. So I think that Section 4311 does address both being absent, being called out for military leave, and being denied a benefit of employment. If there are no further questions at this time, I will reserve the remainder of my time for rebuttal. Thank you. Thank you. Ms. Cattell, when you're ready. Good morning. May it please the Court, I am Reanna Cattell, a Frasier Striker, appearing on behalf of the Appley Omaha Public Power District, or OPPD. OPPD respectfully asks this Court to affirm the decision of the District Court granting OPPD's motion for summary judgment, denying Mr. Kelly's motion for summary judgment, and dismissing Mr. Kelly's claim with prejudice. I would like to state that this case does not involve any discriminatory animus towards veterans or members of the military. To the contrary, OPPD supports its employees serving in the military and fulfilling their obligations. Rather, this case involves the application of a neutral policy which supports all OPPD employees, both military and non-military alike, who choose to pursue higher education and career development by reimbursing those employees for certain costs incurred in doing so. Here, Mr. Kelly incurred no costs while pursuing his degree, leaving nothing to be reimbursed pursuant to OPPD's employee education program. And that alone is why OPPD determined Mr. Kelly wasn't eligible for benefits. Suppose he said, I don't want to use those benefits. I've already designated them for my kid or whatever. What would OPPD's position have been? He didn't get the benefits? Well, I don't believe that that's been thoroughly explored on the summary judgment record at this stage. However, I believe their response to his initial application for benefits is instructive of how that would have been handled. When Mr. Kelly originally applied for benefits in 2011, he was not receiving tuition assistance from an outside source at that time, and that application for benefits was approved. And so I believe that that can be used to suggest that if he was not receiving the benefits at some future date, they would have continued to approve those applications. The testimony in the record indicates that Mr. Kelly began his employment at OPPD immediately after being discharged from the United States Navy, and so they would have had knowledge of his military service at that time that that 2011 application that was approved was submitted. So it only became a problem after he started taking his Montgomery GI Bill benefits in addition to the OPPD tuition benefits, or am I wrong about that? I believe that that is correct, that under OPPD's employee education policy, it states that you're ineligible for these benefits to the extent you're receiving tuition assistance from an outside source, such as a scholarship, a grant, or VA benefits. And so once he began receiving that tuition assistance from an outside source is when OPPD looked at that and said, OK, has this covered your expenses in full? If so, under our neutral policy, you're ineligible for these benefits. Has it not covered your expenses in full? And if so, then we will go ahead and pay you the difference as stated in the declaration of Darlene Brown that OPPD did with other veterans. Now, as I understand the Montgomery GI Bill benefits, that there's a tuition component, but there's also a cost of education component. And so you're concerned about tuition here, and you're saying you get the GI Bill benefits, therefore we're reducing that and you take it all off the top. But, you know, the educational assistance piece can go to housing. So if you were living in a dorm, you could do that. If you have other housing that are related expenses that are related to your education, that can be paid. Books can be paid. And by taking this money and applying it sort of all to tuition, you are sort of depriving them of this other benefit, right? Yes, Judge Erickson. Respectfully, I do think that the employee education program considers more than just tuition. I think that that is, of course, the bulk of the expenses, as is routinely the bulk of expenses when pursuing a degree. However, it does allow for certain expenses or certain fees to be paid as well under the language of the policy. And that includes things like books and other fees. I also believe that the evidence in the record establishes that the benefits that Mr. Kelly received exceeded by, I believe, almost $2,000, perhaps $3,000, what would be eligible for reimbursement under the employee education program policy. Thank you. I think that the central question here is whether the military membership service or obligation was the motivating factor for OPPV's decision. And it is only a motivating factor under the case law if an employer relied on, took into account, considered, or considered its decision on that military status, service, or obligation. And here, the military membership was not a motivating factor in OPPV's determination. OPPV focused its determination on his tuition assistance from an outside source. I think the evidence of that lack of motivating factor is included in a number of places in the record, including Mr. Kelly's initial application being approved when he was not receiving the outside tuition assistance. There is a question of causation here. I asked Opposing Counsel, there's but-for causation, which is but-for his military service. That's not what we have. I mean, that's not what the statute requires. My question is, is the once-removed issue that I asked Opposing Counsel about, is it close enough in your view? And if not, why not? I believe that it is not close enough. I believe it is far enough removed that it does not establish that military membership was the motivating factor. And I believe that the courts holding in Martinez v. Sun Life Assurance Company of Canada is analogous and instructive in responding to that question. In that case, an employee sought long-term disability benefits, and under the neutral language of that policy, it stated that the benefits would be offset if they received benefits from an outside source, another source for that same disability. And in that situation, the employee's long-term disability benefits were reduced by the amount. Judge Kelly, are you able to hear all of us? I am. Thank you. Okay. I'm sorry. They're working over there apparently. Well, when you said all of us, I hear them too. Isn't that fun? Thank you, Your Honors. In that case, the disability benefits were offset by the amount of the veteran's benefits the individual received for the same disability. And the court found that that did not violate USERRA because it was not the military membership service or obligation that was the motivating factor for that decision. I believe that that is directly analogous here. I agree with Judge Erickson that the holding in the Erickson case, that opposing counsel cites, is different. It is a situation where we are not comparing different facts and, therefore, is not directly applicable in this situation. In Erickson, that individual was informed that he was terminated due to his absence for military service, and that is directly contrary to the language of USERRA. That is not the situation here. Mr. Kelly was never informed that he was not receiving employee education benefits due to his military status, obligation, or membership. In fact, Mr. Kelly was informed when he was told that he would not be eligible for the benefits that he sought in 2010 and 2011 that that would not preclude him from seeking additional benefits in the future should he incur costs for which he could be reimbursed under the policy. That language is included in, I believe, it's Exhibit C to the Declaration of Darlene Brown in the record. Judge Erickson asked opposing counsel, is there any evidence on 529s, or I think they're called Coverdale Education Program, whether those would be treated similarly to the GI Bill benefits, or do we just not know? I don't believe that that specific question has been addressed in the record at this stage, at the summary judgment stage. However, I do think that the language of the policy itself is somewhat instructive in that. The policy states that if there is tuition assistance from an outside source, such as VA benefits, scholarship grants, et cetera, I do not believe, I mean, I think that et cetera right there says it's not an exhaustive list, so I don't believe that it's necessarily determinative how that would be established at this stage, but I think it's reasonable that that could be something that could be considered as outside tuition assistance. I think that opposing counsel argues that USERRA should be broadly construed for the benefit of service members, and OPPD does not disagree. However, that broad construction cannot stretch USERRA beyond the statutory language. Under the statutory language, Mr. Kelly is required to establish that his was ineligible for the employee education benefits, and Mr. Kelly cannot do so. Mr. Kelly was not denied any benefit of employment due to his membership or service in the United States Navy. He was determined to be ineligible for employee education benefits simply because his potentially reimbursable costs were paid by tuition assistance from an outside source. There was some discussion in opposing counsel's arguments regarding the statements made by Ms. Brown or the alleged statements made by Ms. Brown. It is OPPD's position that those statements are hearsay which should not be considered for the purposes of opposing a motion for summary judgment. I also think that it's important that Ms. Brown was not the decision maker in this case. The individual who was the decision maker was Ms. Pittman, and her deposition testimony, which is in the record, makes clear that OPPD did not consider Mr. Kelly's veteran status or military membership when making its determination. It simply looked at whether he was receiving tuition assistance from an outside source. Ms. Brown worked to ensure that individuals who were receiving GI Bill benefits that did not cover their costs in full received that balance through the employee education program. Opposing counsel suggests that this shows discrimination. However, I believe it shows the exact opposite, that there is no OPPD sought to ensure that individuals were reimbursed for costs they incur. However, under the present facts, there were simply no costs incurred by Mr. Kelly. I also believe, as I believe Judge Erickson stated, that there is a reasonable distinction that can be made between verifiable payments and non-verifiable payments if the alleged statement of Ms. Brown is considered. And I think that the verifiable payments, the tuition assistance from VA benefits here, are distinguishable from generous gifts from family members or friends. Ultimately, the question remains is whether Mr. or, excuse me, whether OPPD considered or conditioned its determination that Mr. Kelly was ineligible for employee education benefits based on his status as a veteran. And I believe the evidence in the record shows that that played no part in OPPD's determination. At this time, I'm happy to answer any questions that the court may have. However... It doesn't appear to be any. Thank you very much for your time. Thank you. Ms. Geiser, you have a minute 36. Thank you. I just want to address a few points quickly in regards to OPPD's arguments. They argued that there is no discriminatory animus present in the case of Mr. Kelly. They argued that there is multiple e-mails from OPPD's decision maker Paula Pittman that were derogatory and threatening towards Mr. Kelly, including making a statement such as, we will continue to apply this policy as we always have. However, I must tell you that as a fellow OPPD employee, I find it extremely disheartening to see such a blatant and aggressive display of entitlement. And then went on to say to her fellow coworkers, we need more employees like this one. And she said, no, not, with about 16 exclamation points after it. That is certainly evidence of discriminatory animus. OPPD also argued that costs such as books would be covered under its tuition reimbursement program as a type of additional fee that would be covered. And under the policy, which is contained at page 24 of the addendum, books, transcripts, insurance, health, travel, athletic fees, matriculation fees, life experience credits are all listed as types of fees that you would incur that would not be covered under their program. With regard to Martinez, which was referenced by OPPD, respectfully, the First Circuit got it wrong. They narrowly construed USERRA in that case to permit an insurer to offset the receipt of VA disability benefits from the long-term disability benefits. They had an obligation to provide for that employee. I see that I'm out of time. May I briefly finish? You may. And so respectfully, under USERRA, it should be broadly construed in favor of its military beneficiaries. And that is not what the First Circuit did in the Martinez case. So the court should not follow Martinez. The appellant would ask that the court reverse the district court's decision regarding liability and award damages to Mr. Kelly based on the evidence in the record or remain to the district court with instructions to do the same. Thank you. Thank you. The case will be taken under advisement. Thank you very much for your time here. We appreciate the briefing and the argument. It's been helpful to us. I believe the last case on the calendar, Hallie v. Commissioner of Social Security, is without argument. Is that true? Yes, it is, Your Honor.